THE STATE OF OHIO v. GIUNCA.

*Intoxicating liquors—Unlawful possession—Grape juice fermented by natural process.*

Possession of grape juice which has been permitted to ferment and become intoxicating, and is kept for beverage purposes, is in clear violation of the prohibition statutes of Ohio, and the plea that the change which has taken place in the character of the product is due to processes of nature is without avail.

(Decided November 10, 1923.)

ERROR: Court of Appeals for Stark county.

*Mr. Thomas M. Miller* and *Mr. J. L. Hilton,* for plaintiff in error.

*Mr. U. S. Johnston,* for defendant in error.

Intoxicating Liquors, 33 C. J. § 198 (Anno.).

HOUCK, J. In this case the defendant in error, Alex. Giunca, was convicted in the Municipal Court of the city of Canton of the illegal possession of intoxicating liquor, in violation of Section 6212-15, General Code, a part of the "Crabbe Act." The judgment of the Municipal Court was reversed by the Court of Common Pleas. Section 6212-15, General Code, recites:

"No person shall, after the passage of this act, manufacture, sell, barter, transport, import, export, deliver, furnish, receive, give away, prescribe, possess, solicit or advertise any intoxicating liquors, except as authorized in this act. Liquor, and liquor preparations and compounds for non-beverage purposes, and wine for sacramental purposes, may be manufactured, purchased, sold, bartered, transported, imported, exported, delivered, furnished, received, given away, possessed, prescribed, solicited and advertised, but only in accordance with the provisions of Title II of the Act of Congress known as the 'National Prohibition Act,' passed October 28, 1919."

The facts, which are not in dispute, are as follows:

Alex. Giunca, the defendant in error, lived at 1921 Eighth street, N. E., in the city of Canton. He owned a garage at the rear of 1844 Eighth street, N. E. The garage, which is not on the residence property, and does not adjoin and is not very near the lot upon which his residence and restaurant are located, was used for the storage of four automobiles, one owned by the defendant in error, and the other three owned by parties who rented garage space from him. In this garage

police officers armed with a search warrant found twenty-five 50-gallon barrels of grape wine, most of which were full. According to the testimony for the defendant in error, which was not controverted by the state, thirteen of the barrels belonged to the defendant in error. The wine in nine of these was made from poor grapes, which accused claims, was for vinegar, and the wine in the other four was made by him and kept by him for beverage purposes for himself and family. The other twelve barrels of wine belonged to other people, some of whom lived at the same address as Giunca. These also were made and kept for beverage purposes, and were placed in the garage with the knowledge and consent of the defendant in error. On one occasion, in his garage, where the wine was kept, he gave a little of his wine to a friend, George Davis, to drink. Giunca testified that of the wine taken from him three and one-half barrels were for drinking purposes, three big barrels and one-half barrel fit for beverage purposes; that when first made it was as sweet as honey, but that it changed; that he drilled a little hole in the barrel to let the air come out, so the liquid would work out and not burst the barrels; that after the drilling of the holes the liquid began to work, and gas came out of the little holes; that he used it for beverage purposes, and carried it to his home in a bucket or glasses; and that he made the wine the same as he did in the old country and "it had a little kick to it."

The evidence for the state is that the barrels taken from the garage contained grape wine, which was intoxicating, possessing more than one-half of

one per cent. alcohol, and was fit for beverage purposes.

Question: Under these facts and the provisions of the "Crabbe Act" was the Common Pleas Court warranted in reversing the judgment of conviction of Giunca in the Municipal Court?

It is urged by counsel for Giunca that the possession of wine, which is admitted to contain more than one-half of one per cent. alcohol, in the garage of Giunca, which was made by him for beverage purposes, where nothing was done by any of the parties to cause or prevent fermentation of the grape juice, is not in violation of the "Crabbe Act" or any of its provisions.

Section 6212-15 reads, in part, as follows:

"No person shall, after the passage of this act, manufacture, sell * * * possess * * * any intoxicating liquors, except as authorized in this act * * *."

Section 6212-14 reads:

"In the interpretation of this act the word 'liquor' or the phrase 'intoxicating liquor' shall be construed to include * * * wine, and in addition thereto any distilled, spirituous, malt, vinous, or fermented liquor * * *."

Section 6212-16 reads:

"It shall be unlawful to have or possess any liquor * * *."

Section 6212-14:

"The term 'given away' and the term 'possess' shall not apply to intoxicating liquor in a *bona fide* private dwelling."

Section 6212-17:

"The penalties provided in this act shall not

apply to a person for manufacturing vinegar, or non-intoxicating cider and fruit juices exclusively for use in his home, but such cider and fruit juices shall not be sold or delivered after they become intoxicating except to persons having permits from the United States government to manufacture vinegar. Nothing herein shall be construed to prevent the sale of vinegar and said penalties shall not apply to any such sale."

The terms "private dwelling" and "bona fide private dwelling" are defined as follows:

Section 6212-16:

"The term 'private dwelling' shall be construed to include the room or rooms used and occupied not transiently but solely as a residence in an apartment house, hotel, or boarding house."

Section 6212-27 (109 O. L., 6), a part of the "Miller Act," provides:

"And no place shall be regarded as a bona fide private residence under the laws prohibiting the liquor traffic, wherein liquors are possessed which have been illegally manufactured or obtained."

Learned counsel for Giunca seek to justify the reversal of his conviction upon the provision of the saving clause in Section 6212-17, General Code, in that the liquor in question was fruit juice, which it was not at the time its unlawful possession was charged. It had passed beyond the exception relied upon, and had become wine—intoxicating liquor—and contained more than one-half of one per cent. alcohol. Its use was for beverage purposes, which is prohibited by law, and it was not for exclusive use in his home, for he gave some of it to one George Davis, in the garage.

The provisions of the "Crabbe Act" prohibit the possession of intoxicating liquors which have been obtained or manufactured since the prohibition act went into effect. Wine is an intoxicating liquor, and in this instance was used for beverage purposes, thus coming clearly within the provisions of Section 6212-14, General Code.

It must be remembered that by constitutional enactment, as well as under the provisions of the "Crabbe Act," the use of intoxicating liquors as a beverage is outlawed. The mere possession of intoxicating liquor casts the burden upon the possessor of showing that he does so lawfully.

"It will be observed that the offense defined in Section 6212-15 consists in possessing intoxicating liquors, and when the proof establishes that fact it is all that is required under the statutory provision. It follows that it is not necessary to allege in the affidavit that the intoxicating liquor was for beverage purposes. If the intoxicating liquor is possessed lawfully, that may be shown as a matter of defense. We do not think it necessary to aver in the affidavit that the intoxicating liquor is for beverage purposes for the further reason that the 'Crabbe Act' simply outlaws intoxicating liquor for beverage purposes, and the force and effect of that act is that one who possesses it is guilty of an offense, unless such possession comes within the exceptions thereto, which exceptions must be affirmatively established as a defense." *State* v. *Elson,* 16 Ohio App., page 186, 32 O. C. A., page 483.

We are of the opinion that a proper interpretation of Sections 6212-14, 6212-15, 6212-16, 6212-17,

and 6212-27, General Code, can but lead to the conclusion that where any intoxicating liquors are unlawfully manufactured or obtained the possession of the same is unlawful, and that this rule applies in the instant case, where the processes of nature were permitted to cause what was in the first instance non-intoxicating grape juice to become intoxicating, where the accused made small holes in the barrels to assist in the fermentation of the liquid, where the same became wine containing more than one-half of one per cent. alcohol, and where the wine was kept in a garage owned by the accused, and used by himself and three others, and was admitted to be used by him for beverage purposes.

It will further be observed that under all the facts, circumstances and surroundings of the case, and the proper application thereto of the exceptions, as contained in Section 6212-17, General Code, the accused has not brought himself within such exceptions.

In the instant case the liquor in question was found in a garage, and not in a private residence. It was manufactured, owned and possessed for beverage purposes, and not to be delivered to anyone having a permit to manufacture vinegar. We find and hold it to be clearly within the prohibition of the possession of intoxicating liquors, as found in the "Crabbe Act," and therefore such possession is and was in violation of law. However, under the facts in this case, if the wine had been found in the private residence of defendant in error, or the garage in which it was found had been on his private residence lot, we would still be of

opinion that the possession of said wine was unlawful.

It does not require any argument to convince either the lawyer or layman that those who drafted the "Crabbe Act," and the Legislature that made it a law, did not do so with a view to protect the liquor traffic, or those charged with the violation of laws enacted to punish persons charged with its violation. The preamble to the act (108 O. L., pt. 2, 1182) plainly shows that it is to be construed against the violator, and not in his favor. The preamble reads:

"This act shall be deemed to be an exercise of power granted in Article XV, Section 9, of the Constitution of Ohio, and the police power of the state and its provisions shall be liberally construed to carry out the provisions of this act."

Section 9, Article XV of the Constitution, reads:

"The sale and manufacture for sale of intoxicating liquors as a beverage are hereby prohibited. The General Assembly shall enact laws to make this provision effective. Nothing herein contained shall prevent the manufacture or sale of such liquors for medicinal, industrial, scientific, sacramental, or other non-beverage purposes."

We must construe statutes and constitutional enactments as we find them. If they are unwise, harsh, or not in accord with sound public sentiment, it lies not within the power of courts to arbitrarily set them aside, but the power rests with the people, the legislature and constitutional conventions to remedy same, if deemed necessary.

Under the Constitution of Ohio and the provisions of the Crabbe and Miller Acts the liquor

traffic and the possession of intoxicating liquors for beverage purposes are most assuredly outlawed in Ohio.

We therefore find, under the facts, applying to them the provisions of the above acts and the rules of law herein laid down, that the accused is guilty, as charged in the affidavit. It follows that we find that the judgment of conviction was right and that the judgment of reversal was wrong.

The judgment of the Common Pleas Court is reversed, and that of the Municipal Court affirmed, and this case is remanded for the execution of the judgment of conviction as found by the Municipal Court.

*Judgment of the Common Pleas Court reversed and that of the Municipal Court affirmed.*

PATTERSON and SHIELDS, JJ., concur.